# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| SHARON RENEA BLACKMON, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> MANDY COHEN, PATRICIA ) <br> GARCIA, CLAUDIA HORN, VETA ) <br> COOPER-HENDERSON, TARA ) <br> MYERS, AND ALMA TAYLOR, in ) <br> their individual capacities, ) <br> ) <br> Defendants. ) | 1:17CV890 |

**MEMORANDUM OPINION AND ORDER**

Pro se Plaintiff Sharon Renea Blackmon has sued individuals employed in North Carolina's Department of Health and Human Services for failure to pay overtime. This matter is before the Court on a Motion to Dismiss [Doc. #17] by Defendants Mandy Cohen, Claudia Horn, Patricia Garcia, Veta Cooper-Henderson, Tara Myers, and Alma Taylor (collectively "Defendants"). For the reasons explained below, the motion is granted in part and denied in part. It is granted in part as to Blackmon's North Carolina Wage and Hour Act claim, but it is denied in part as to her Fair Labor Standards Act claim which is treated as having been alleged against the State of North Carolina rather than Defendants.

I.

From March 2010 until August 31, 2017, Blackmon was employed as a Processing Assistant within North Carolina's Department of Health and Human

Services ("NCDHHS"). (Compl. ¶¶ 1 (Parties[1]), 3 (Facts & Allegations) [Doc. #2].) Blackmon's primary job duties as a Processing Assistant IV included scheduling physician appointments, making travel arrangements for clients, paying vendor invoices, and other general clerical duties like answering the phones, making copies, and data entry. (Id. ¶ 10 (Facts & Allegations).)

Cohen, Horn, Myers, and Taylor served as the Secretary of NCDHHS, Senior Director of NCDHHS, Division Director of NCDHHS, and Regional Director of NCDHHS, respectively. (Id. ¶¶ 2-5 (Parties).) Garcia was the Human Resources Director of the Division of Vocational Rehabilitation Services ("DVR") with NCDHHS, while Cooper-Henderson was the Unit Manager of DVR. (Id. ¶¶ 6-7 (Parties).) They are alleged to have been Blackmon's employers and responsible for administering her hours of work, payment of wages, conditions of employment, and pay policies. (Id. ¶ 5 (Facts & Allegations).)

Defendants allegedly misclassified non-exempt employees as exempt to gain more work productivity and avoid paying overtime. (Id. ¶ 13 (Facts & Allegations).) Blackmon refers to this "scheme" as "budgeted labor". (Id.) Because of the operational needs and demands of NCDHHS clients, a shortage of office personnel, and a hiring freeze, Defendants allegedly used BEACON, an electronic time-keeping system for tracking and reporting employee work hours, to further their "budgeted

---

[1] The paragraphs in the Complaint begin numbering at "1" for both sections entitled "Parties" and "Facts and Allegations". Therefore, the particular section from which each paragraph comes is also cited.

2

labor" scheme. (Id. ¶¶ 12, 14, 16 (Facts & Allegations).) BEACON flagged and rejected any time recorded over forty hours a week. (Id. ¶ 14 (Facts & Allegations).) "This rejection forced [Blackmon] to inaccurately record times to reflect 40 hours a week for Defendants['] approval, although overtime hours were made and attempted to be recorded." (Id.) When Blackmon notified Defendants of the overtime hours she had worked, they instructed her to use "flex time" to offset her overtime. (Id. ¶ 15 (Facts & Allegations).)

Defendants also "expected, encouraged, enticed, induced, condoned, required, permitted, and suffered [Blackmon] to receive and handle emails, faxes, text messages, internet searches, and other such communications to and from management, co-employees, and clients during her lunch period and after [her] scheduled end of the work day 'off the clock.'" (Id. ¶ 18 (Facts & Allegations).) They similarly "expected, encouraged, enticed, induced, condoned, required, permitted, and suffered [Blackmon] to compile 'end-of-day' reports, job-related training, and attend mandatory meetings during her lunch period and after [her] scheduled end of the work day 'off the clock'." (Id. ¶ 19 (Facts & Allegations).)

Blackmon alleges that this "budgeted labor" scheme was ultra vires and served Defendants' own personal interests by allowing them to receive higher scores on their "budgeted labor" matrixes for job evaluations, bonuses, special recognition, and rewards. (Id. ¶¶ 13, 20, 21, 31 (Facts & Allegations).)

She has sued Defendants in their individual capacities for unpaid overtime wages, liquidated damages, attorney's fees, and interest for their violation of the

Fair Labor Standards Act ("FLSA"). (Id. ¶¶ 27 (Facts & Allegations), 33 (First Claim for Relief).) Although the only claim for relief alleged is one for violating the FLSA, Blackmon also mentions the North Carolina Wage and Hour Act ("NCWHA") in the introductory paragraph (alleging that she is entitled to unpaid overtime wages under the FLSA and the NCWHA) and in the first paragraph of her prayer for relief (seeking a declaration that Defendants violated the FLSA and NCWHA).

Defendants have moved to dismiss the FLSA claim and any claim under the NCWHA, to the extent that Blackmon asserted one. They first argue that Blackmon's FLSA claim against them in their individual capacities is actually a suit against the State and, as such, the individual capacity claims should be dismissed. (Br. in Supp. at 4-9 [Doc. #19].) They further argue that Blackmon has failed to state a claim for relief under the FLSA. (Id. at 9.) Next they argue that, to the extent Blackmon has asserted a NCWHA claim, not only are they entitled to Eleventh Amendment immunity, but the State is exempt from the overtime provision in the NCWHA. (Id. at 10-16.)

## II.

### A.

It is necessary "to begin the analysis [of Blackmon's FLSA claim] by noting that 'when a suit is brought only against state officials, a question arises as to whether that suit is a suit against the State itself.'" Martin v. Wood, 772 F.3d 192, 195 (4th Cir. 2014 (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984)). To answer the question, the court must "look beyond

4

the form of the complaint . . . to determine who is the 'real, substantial party in interest.'" Id. at 196 (quoting Pennhurst State Sch. & Hosp., 465 U.S. at 101). "To identify the real, substantial party in interest," "the substance of the claims" must be examined by asking:

> (1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties, (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State, (3) would a judgment against the state officials be institutional and official in character, such that it would operate against the State, (4) were the actions of the state officials taken to further personal interests distinct from the State's interests, and (5) were the state officials' actions ultra vires.

Id. (internal quotations and citations omitted). As Defendants argue, an examination of Blackmon's Complaint shows that the State is the real, substantial party in interest.

First, Blackmon alleges that not only is each Defendant employed by NCDHHS, but that each had the power to control her work hours, payment of wages, and conditions of employment and was responsible for administering pay policies. Their alleged unlawful actions were tied inextricably to their official duties. Next, because Blackmon alleges that she and Defendants were employees of NCDHHS, had Defendants authorized overtime pay at the outset, the State would have borne that burden. Similarly, because Defendants are alleged to have been the Secretary of NCDHHS, the Senior Director of NCDHHS, the Division Director of NCDHHS, the Regional Director of NCDHHS, the Human Resources Director of DVR with NCDHHS, and the Unit Manager of DVR with NCDHHS, a

5

judgment against them awarding Blackmon overtime pay would be institutional and official in character such that it would operate against the State.

Next, although Blackmon alleges that Defendants' "budgeted labor" scheme served their own personal interests by allowing them to receive higher scores on their "budgeted labor" matrixes for job evaluations, which often resulted in bonuses, special recognitions, and awards, Defendants are also alleged to have used "the 'budgeted labor' scheme to meet the operational needs and demands of its clients' [sic] due to a shortage of office personnel and hiring freeze by Defendants." In other words, Defendants are not alleged to have acted to further personal interests <u>distinct</u> from the State's. Finally, Blackmon conclusorily alleges that Defendants' "budgeted labor" scheme was ultra vires, but no factual allegation supports their having acted "beyond the scope of power allowed or granted", *Ultra Vires*, <u>Black's Law Dictionary</u> (10th ed. 2014). Instead, the allegations, as described above, show that Defendants acted within the scope of their authority.

All of the <u>Martin</u> factors lead to the conclusion that the State is the real, substantial party in interest, and not the individual defendants. As a result, the claim against Defendants is really one against them in their official capacities. "[A] suit for damages against individual officers in their official capacities is treated like a suit against the state itself." <u>Lizzi v. Alexander</u>, 255 F.3d 128, 136 (4th Cir. 2001), <u>overruled in part on other grounds</u>, <u>Nev. Dep't of Human Res. v. Hibbs</u>, 538 U.S. 721 (2003).

B.

Defendants next challenge the sufficiency of Blackmon's FLSA allegations. They argue that the "Complaint is devoid of allegations that [Blackmon] was not compensated for this time [she worked during lunch or after normal work hours] or that this resulted in her working more than forty hours in a work week" and is otherwise speculative. (Br. in Supp. at 9.) To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in its favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and

7

"naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557.

A pro se complaint "is to be liberally construed and . . ., however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations omitted). Nevertheless, the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (2008).

The FLSA requires, in relevant part, that an employee who works more than forty hours in a workweek be compensated at a rate not less than one and one-half times the regular rate of pay for those excess hours. 29 U.S.C. § 701(a)(1). The Fourth Circuit Court of Appeals has recently addressed "the level of detail an FLSA overtime claimant must provide to overcome a Rule 12(b)(6) motion to dismiss." Hall v. DIRECTV, LLC, 846 F.3d 757, 776 (2017). "[T]o make out a plausible overtime claim, a plaintiff must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours." Id. "Under this standard, plaintiffs seeking to overcome a motion to dismiss must do more than merely allege that they regularly worked in excess of forty hours per week without receiving overtime pay." Id. Yet, the court "emphasize[d]" that this standard "does not require plaintiffs to identify a particular week in which they worked uncompensated overtime hours.

8

Id. "Rather, this standard is intended to require plaintiffs to provide some factual context that will nudge their claim from conceivable to plausible." Id. (internal quotations omitted). "Thus, to state a plausible FLSA overtime claim, plaintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." Id. (internal quotations omitted).[2]

A liberal construction of Blackmon's allegations shows that she has met this pleading standard. She has detailed the use of BEACON, the electronic time-keeping system, in Defendants' "budgeted labor" scheme. "BEACON flags and rejects any time recorded over 40 hours a week" which "forced [Blackmon] to inaccurately record times to reflect 40 hours a week for Defendants['] approval, although overtime hours were made and attempted to be recorded." Blackmon also alleges that she even notified Defendants of the overtime she worked and that they required her "to comply with the 'budgeted labor' scheme". Together with these allegations she detailed the work Defendants required of her "off the clock" during her lunch period and after her work day ended. Blackmon has provided sufficient details about her unpaid work to support a reasonable inference that she worked more than forty hours in a given week without overtime compensation.

---

[2] North Carolina has expressly waived its sovereign immunity as to claims by State employees in State and federal courts for violations of the FLSA. N.C. Gen. Stat. § 143-300.35(a)(1).

Defendants' motion to dismiss Blackmon's FLSA claim is denied, but the claim is treated as one against the State of North Carolina, rather than against Defendants.

III.

Defendants next challenge Blackmon's NCWHA claim, to the extent she has alleged one. They argue that they are entitled to Eleventh Amendment immunity and that the State of North Carolina is exempt from the NCWHA. (Br. in Supp. at 10-16.) These arguments are most effectively addressed together.

The NCWHA, which "is modeled after the" FLSA, Whitehead v. Sparrow Enter., Inc., 605 S.E.2d 234, 237 (N.C. Ct. App. 2004), requires "[e]very employer" to "pay each employee who works longer than 40 hours in any workweek at a rate of not less than time and one half of the regular rate of pay of the employee for those hours in excess of 40 hours per week." N.C. Gen. Stat. § 95-25.4(a). Blackmon's allegations of overtime due from Defendants suffice to state a claim under the NCWHA, just as they did for her FLSA claim. Whether these allegations can be sustained against the State or Defendants is a different question.

Because the Eleventh Amendment is understood to bar "a suit against state officials when 'the state is the real, substantial party in interest'", Lizzi, 255 F.3d at 135 (quoting Pennhurst State Sch. & Hosp., 465 U.S. at 101), "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law", Pennhurst State Sch.

10

& Hosp., 465 U.S. at 106. "Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." Id. Stated another way, "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when . . . the relief sought and ordered has an impact directly on the State itself." Id. at 117.

Pursuant to state law, North Carolina is exempt from the NCWHA overtime provision. N.C. Gen. Stat § 95-25.14(d); Johnson v. N.C. Dep't of Transp., 418 S.E.2d 700, 704 (N.C. Ct. App. 1992) (noting that "the statute expressly exempts 'any State or local agency' from its overtime provisions"). Therefore, it could neither be sued for NCWHA violations in state court because it is exempt, nor in federal court because it is exempt and immune from suit.

Whether Blackmon can pursue a NCWHA claim against Defendants is less clear. As the United States Supreme Court has recognized, "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." Pennhurst State Sch. & Hosp., 465 U.S. at 121. And, as noted above, in addition to immunity from official capacity suits, the State has statutorily exempted itself from compliance with the overtime provision in the NCWHA.

Yet, here, Blackmon seeks to recover from Defendants in their individual capacities. (See, e.g., Compl. ¶ 27 ("Plaintiff hereby seeks to recover from Defendants in their individual capacity . . . .").) While Defendants rely on Martin for their position that they are not the real, substantial party in interest, the Fourth

11

Circuit Court of Appeals has stated that, "under North Carolina law, '[t]he crucial question for determining whether a defendant is sued in an individual or official capacity is the nature of the relief sought, not the nature of the act or omission alleged.'" Stewart v. North Carolina, 393 F.3d 484, 491 (2005). A suit is against a defendant in his individual capacity when the plaintiff seeks recovery from the defendant directly. Id. A suit is against a defendant in his official capacity when the plaintiff seeks recovery from the entity for which the defendant is an agent. Id. Of course, "the mere incantation of the term 'individual capacity' is not enough to transform an official capacity action into an individual capacity action." Lizzi, 255 F.3d at 137.

Even if Stewart suggests that Defendants are being sued in their individual capacities because Blackmon alleges that she is seeking recovery directly from Defendants, permitting such a claim against Defendants to go forward when the State for whom they were doing their work is immune from such a claim flies in the face of reason. The Fourth Circuit Court of Appeals in Lizzi faced a similar conundrum. In Lizzi, the plaintiff sued the Washington Metropolitan Area Transit Authority ("WMATA") for violations of the Family and Medical Leave Act ("FMLA"). 255 F.3d at 130. WMATA, an interstate compact agency and instrumentality of several states, was, at the time[3], found to have Eleventh

---

[3] See Coleman v. Md. Ct. of App., 626 F.3d 187 (4th Cir. 2010). In Coleman, the court ultimately found the same self-care FMLA provision at issue in Lizzi to be an invalid abrogation of states' immunity, just as had the Lizzi court. Id. at 193. However, because the Lizzi "opinion's rationale was not specific to the self-care

12

Amendment immunity from suit for FMLA violations. Id. at 131, 136. When the plaintiff argued that his claims against his individual supervisors should be treated as individual capacity claims, the court refused to hold individual state employees personally liable under the FMLA for official acts. Id.

> To hold that individual supervisors, as 'employers,' may be sued under the statute while also holding that the Constitution prohibits the state itself from being sued would undermine the Supreme Court's decisions in Garrett, Kimel, Seminole Tribe. Plaintiffs like Lizzi would easily be able to evade the Eleventh Amendment prohibition against suing a state merely by naming the individual supervisor as the employer. We refuse to create such an anomaly.

Id. The court found that "[b]ecause WMATA enjoys Eleventh Amendment immunity for claims brought under the FMLA, the individual supervisors under the FMLA are protected by that same immunity." Id. at 138.

In this case, North Carolina is not only statutorily exempt from liability for the overtime provision in the NCWHA, but it is also protected from suit in federal court by the Eleventh Amendment. Permitting supervisors to be found individually liable for their official conduct in violation of the NCWHA overtime provision would be an end-run around the protections the Eleventh Amendment and North Carolina itself have afforded the State. Therefore, Blackmon cannot bring suit against Defendants in their individual capacities for violations of the NCWHA's overtime provision.

---

provision" and "[i]nstead, it addressed congressional authority in more general terms", the "analysis is no longer valid in light of [Nev. Dep't of Human Res., 538 U.S. 721]." Id. at 193 n.4.

IV.

For the reasons stated above, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss [Doc. #17] is GRANTED IN PART AND DENIED IN PART. It is granted in part as to Blackmon's NCWHA claim against both the State and Defendants, and that claim is dismissed in its entirety. It is denied in part as to Blackmon's FLSA claim, but the claim against Defendants is treated as one against the State of North Carolina.

This the 31st day of May, 2018.

<u>/s/ N. Carlton Tilley, Jr.</u>
Senior United States District Judge