# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHARON RENEA BLACKMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MANDY COHEN, PATRICIA | ) | 1:17CV890 |
| GARCIA, CLAUDIA HORN, VETA | ) | |
| COOPER-HENDERSON, TARA | ) | |
| MYERS, AND ALMA TAYLOR, in | ) | |
| their individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

Plaintiff Sharon Renea Blackmon filed the instant action alleging that she was owed unpaid overtime wages. This matter is before the Court on the parties' Joint Motion for Approval of Fair Labor Standards Act Settlement. [Docs. #41, 43.] For the reasons that follow, it is determined that the terms of the Settlement Agreement, including attorney's fees and costs, are fair and reasonable; therefore, the Joint Motion is granted.

Before approving an FLSA settlement, the court must determine if the settlement is a "fair and reasonable compromise of disputed claims and issues arising from a bona fide dispute raised pursuant to the FLSA." Kirkpatrick v. Cardinal Innovations Healthcare Sols., 352 F. Supp. 3d 499, 502 (M.D.N.C. 2018) (citing Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1355 (11th Cir. 1982)). Thus, to approve a FLSA settlement, the court must make "finding[s] with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and

reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement." Duprey v. Scotts Co., LLC, 30 F. Supp. 3d 404, 408 (D. Md. 2014); see also Hood v. Uber Techns., Inc., No. 1:16-CV-998, 2019 WL 93546, at *4 (M.D.N.C. Jan. 3, 2019).

The Court must first determine whether a bona fide dispute exists. "A bona fide dispute is one in which there is some doubt whether the plaintiff would succeed on the merits at trial." Kirkpatrick, 352 F. Supp. 3d at 502 (quoting Hall v. Higher One Machs., Inc., No. 5-15-CV-670-F, 2016 WL 5416582, at *6 (E.D.N.C. Sept. 26, 2016)). To determine this, the court looks to the pleadings and proposed settlement agreement. Id. (citing Duprey, 30 F. Supp. 3d at 404.) Here, while Blackmon plausibly alleged a scheme by which her employer knowingly failed to pay her overtime, (Mem. Op. & Order [Doc. #23]), she acknowledges the issues of proof she faces at trial, including determining and proving the number of hours of overtime she worked, (Mem. in Supp. of Jt. Mot. for Approval at 5 [Doc. #42]). Defendant State of North Carolina[1] denies these allegations and disputes the applicable statute of limitations and the propriety of liquidated damages. (Decl. of Philip J. Gibbons, Jr. ¶ 10 (Sept. 6, 2019) [Doc. #42-3].) "This disagreement is a genuine dispute that supports the concept of a negotiated settlement of this FLSA

---

[1] It was previously determined that the State was the real party in interest, and Blackmon's FLSA claim was treated as having been asserted against the State and not the individuals identified as defendants. (See Mem. Op. & Order [Doc. #23].)

2

claim." Hood, 2019 WL 93546, at *4 (internal quotations and brackets omitted) (quoting Rivera v. Dixson, No. TDC-14-cv-2901, 2015 WL 427031, at *3 (D. Md. Jan. 30, 2015)).

The Court must next determine whether the settlement is fair and reasonable. "Although the Fourth Circuit has not addressed directly the relevant factors the court should consider when determining whether a FLSA settlement is fair and reasonable, district courts within the circuit have generally considered the fairness factors a court would consider under Federal Rule of Civil Procedure 23(e)." Kirkpatrick, 352 F. Supp. 3d at 502 (citing Hoffman v. First Student, Inc., No. WDQ-06-1882, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010)). These factors include "(1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiff; (5) the probability of plaintiff's success on the merits and (6) the amount of the settlement in relation to the potential recovery." Id. at 502-03 (quoting Hargrove v. Ryla Teleservices, Inc., No. 2:11CV344, 2013 WL 1897027, at *2 (E.D. Va. Apr. 12, 2013); see also Hood, 2019 WL 93546, at * 4 & Duprey, 30 F. Supp. 3d at 409. In considering these factors, "there is a strong presumption in favor of finding a settlement fair . . . ." Id. (internal quotation marks omitted) (quoting Lomascolo v. Parsons Brinckerhoff, Inc., No. 18CV1310, 2009 WL 3094955, at *16-*17 (E.D. Va. Sept. 28, 2009)).

In the present case, all six factors support a finding that the settlement is fair and reasonable. First, the parties have engaged in formal discovery, which included the production of approximately 700 pages of payroll and time-keeping information that, along with information from Blackmon, her counsel used to analyze and calculate potential damages. (Decl. of Gibbons ¶ 11.) This analysis allowed her counsel to determine they had sufficient information about Blackmon's claims and her employer's defenses to settle the matter fairly. (Id.)

Next, the parties are seeking approval of their settlement at the conclusion of the discovery period.[2] (See Text Order (June 5, 2019) (extending the deadline for completion of discovery to August 18, 2019).) It is likely they would then have engaged in further motions practice and possibly trial preparation, an estimated three-day trial, and appeals. As Blackmon describes, "[r]esolution of the issues . . . would require substantial time and resources." (Mem. in Support of Jt. Mot. for Approval at 7.) Nevertheless, during settlement negotiations, counsel for the parties "had sufficient information to assess the respective strengths and weaknesses of their case". (Id.)

Third, there is a presumption that "no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary". Lomascolo, 2009 WL

---

[2] Although Blackmon requested and received leave to amend her Complaint, including pursuing the action as a collective action, she never filed an Amended Complaint, likely because the parties were negotiating a settlement at the time of the Court's decision. (Compare Mem. Order (Aug. 8, 2019) [Doc. #40] with Jt. Mot. for Approval (Sept. 6, 2019).)

4

3094955, at *12. Here, there is no evidence of fraud or collusion, and Blackmon's counsel avers that the settlement "is the product of good faith negotiations" and "was reached only after the Parties exchanged discovery and conducted several rounds of demands and counteroffers." (Decl. of Gibbons ¶ 12.) "Blackmon [herself] participated in each step of the settlement process, approved the settlement terms, and authorized acceptance of the settlement." (Id.)

Next, Blackmon's counsel are experienced FLSA litigators. Philip Gibbons, Jr. has focused almost exclusively on litigating labor and employment cases for the last two decades and, more specifically, wage and hour claims under federal and state law for the last ten years. (Id. ¶ 2.) He has served as lead counsel in numerous class and collective action wage and hour lawsuits in federal district courts, including the Southern District of Indiana and the Western District of North Carolina. (Id. ¶¶ 4-5.) He has been rated an "AV" attorney in Martindale-Hubble and recognized in Indiana Super Lawyers and Best Lawyers in America from 2015-2018 in the categories of "Employment Litigation – Plaintiff" and "Labor and Employment Law", respectively. (Id. ¶ 6.) Craig L. Leis has practiced labor and employment law almost exclusively for the past seventeen years, including counseling employers and representing employees. (Id. ¶ 8.)

Fifth, Blackmon describes her probability of success on the merits and related matters as "hotly disputed". (Mem. in Supp. of Jt. Mot. for Approval at 8.) Even if she were successful on her claim for overtime wages, there appears to be meaningful disagreement about the application of the two- or three-year statute of

5

limitations, which turns on the willfulness of her employer's conduct and significantly impacts the amount of Blackmon's recovery, as well as the propriety of liquidated damages.

Finally, the amount of the settlement is significant compared to the potential recovery. According to Blackmon, the settlement amount of $11,625.00 for unpaid overtime wages and $11,625.00 for liquidated damages represents approximately 93% of her estimated unpaid overtime and liquidated damages over the three-year period preceding the lawsuit. (Id. at 13.) All of these factors support a finding that the proposed settlement amount is fair and reasonable.

Next, it is necessary to assess the attorney's fees request made pursuant to 29 U.S.C. § 216(b), which requires the court to "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The Fourth Circuit Court of Appeals has provided a three-step process by which to calculate attorney's fees: (1) "'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate'" applying "the factors set forth in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)", (2) "'subtract fees for hours spent on unsuccessful claims unrelated to successful ones'", and (3) "award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" McAfee v. Boczar, 738 F.3d 81, 88 (2013) (quoting Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009)).

Here, Blackmon's counsel have spent 78 hours representing her on this case, totaling $33,400 in fees, (Decl. of Gibbons ¶ 13), reflecting a blended hourly rate of $428. While Gibbons's current hourly rate is $500, "[t]he majority of the time" he billed was at an hourly rate of $485. (Id. ¶ 21.) Leis's current hourly rate is $450, but "[t]he majority of the time" he billed was at an hourly rate of $425. (Id. ¶ 22.) Although that lodestar totals $33,400, Blackmon's counsel have reduced their fee request by 41% to $19,750 to facilitate settlement, resulting in a blended hourly rate of $253. (Id.)

To assess the reasonableness of this lodestar calculation, the following factors must be applied:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson, 560 F.3d at 243-44 (collectively "the Johnson factors").

Applying the Johnson factors[3], counsel's requested fees are reasonable. Typically, counsel would be required to demonstrate more precisely their expenditures of time and labor, but under these circumstances, there is sufficient

---

[3] Counsel acknowledges that the time limitations imposed on them is not a factor for consideration here. (Mem. in Supp. of Jt. Mot. for Approval at 12.)

7

information before the Court to assess counsel's work here.  Although Blackmon prepared her Complaint and survived dismissal without the benefit of counsel, counsel appeared on her behalf soon after notice of the initial pre-trial conference hearing.  They then submitted a joint report on the parties' behalf, conducted discovery, sought to amend the Complaint, and negotiated settlement over the course of a year's representation, (see Decl. of Gibbons ¶ 14 (describing the division of labor generally)), advocacy reasonably totaling 78 hours.

Blackmon's counsel recognize that her "claims do not present a novel theory under the law", but her "burden of 'proving a negative,' i.e. that Blackmon performed work for which Defendant has no records and claims did not occur, presents difficult and time-consuming evidentiary issues." (Id. ¶ 15.)  Additionally, having attorneys skilled in FLSA litigation, particularly at least one attorney who has served as lead counsel in numerous federal wage and hour disputes, was crucial to obtaining relief for Blackmon – 93% of her estimated unpaid overtime work for the three years preceding this lawsuit.  As previously described, not only are Blackmon's counsel experienced and able, but Gibbons has been recognized for his work in the field.

Furthermore, Blackmon's counsel contend that their significant reduction in fees to facilitate settlement "resulted in lost opportunity costs". (Id. ¶ 16.)  They "took on significant risk of non-payment, the burden of advancing litigating expenses, and the substantial opportunity cost of having to turn down other potentially lucrative work." (Id.)  Additionally, they expected a contingent fee at

the outset and, thus, took on the risk of non-payment were Blackmon unsuccessful. (Id. ¶ 16.)  Furthermore, a case brought by a pro se plaintiff "ranks low in the hierarchy of desirable contingency-based employment law actions because: (1) the relatively small amount of unpaid overtime at stake; and (2) the added burden of entering an appearance 9 months into hotly contested litigation." (Id. ¶ 17.)  This case represented a discrete issue and counsel does not anticipate future work on Blackmon's behalf. (Id.)

Next, according to Blackmon's counsel, the customary fees for like work in the Western District of North Carolina range from $400 to $600 for senior or partner attorneys and from $200 to $400 for associate attorneys. (Id. ¶ 18; see also id. ¶ 19.)  Counsel's support for these figures comes from "an extensive survey of attorney's fees charged by plaintiff-side and management-side employment lawyers in Charlotte, North Carolina" that Gibbons conducted and affidavits and declarations submitted in support of attorney's fees in Driskell v. Summit Contracting Group, Inc., No. 3:16-cv-819-FDW-DCK, (id. ¶ 19), none of which were provided here.  Although it would have been preferable for counsel to have submitted his survey and methodology and affidavits from other labor and employment attorneys in the surrounding areas, under these circumstances it can be determined that their hourly fees are comparable to those charged by similarly situated attorneys.  This is especially true when considering their significantly reduced fee request and resulting blended hourly rate.

Fees awarded in similar cases vary widely, but the awards do not suggest that counsel's requested fees are unreasonable. See, e.g., Leon v. Alvarez, No. CBD-16-0416, at *1, (D. Md. Sept. 25, 2017) (awarding $4,000 in attorney's fees where the plaintiff recovered $4,000 in overtime wages as part of settlement after discovery); Rivera, 2015 WL 427031, at *4 (awarding $9,000 in attorney's fees where the plaintiff received $6,000 in overtime wages as part of settlement after discovery); Hernandez v. Choi, No. TDC-13-3567, 2014 WL 6388333, at *6 (D. Md. Nov. 13, 2014) (awarding $90,000 in attorney's fees where the two plaintiffs each recovered over $30,000 in overtime wages and liquidated damages as part of settlement after briefing on summary judgment). In sum, the Johnson factors weigh in favor of the reasonableness of counsel's requested fees.

There is no reason to reduce counsel's requested fees. First, there are no unsuccessful claims. Blackmon's North Carolina Wage and Hour Act claim was dismissed, but this was in response to Defendant's motion to dismiss her pro se Complaint prior to counsel's involvement. Next, counsel themselves have already significantly reduced their fees – from $33,400 to $19,750 – to facilitate settlement. Accordingly, their requested fees and costs are reasonable.

While the parties' Settlement Agreement is fair and reasonable, it requires Blackmon's counsel to file a dismissal with prejudice "as shown on the attached Exhibit A" upon submission of the Settlement Payment to her counsel. (Settlement Agreement ¶ 4 [Doc. #42-1].) Contrary to the parties' agreement that Defendant pay Blackmon's counsel $19,750.00 in attorney's fees and costs as part of the

10

settlement, Exhibit A evidences the parties' "stipulat[ion] and agree[ment] to dismiss this matter with prejudice, <u>each party to bear its own costs and attorneys' fees</u>." (Ex. A to Settlement Agreement (emphasis added).) The Court trusts the parties will correct the stipulation of dismissal prior to its execution and filing.

For the reasons explained in this Memorandum Opinion, IT IS HEREBY ORDERED that the Joint Motion for Approval of Fair Labor Standards Act Settlement [Doc. #41] is GRANTED and that the Renewed Joint Motion for Approval of Fair Labor Standards Act Settlement [Doc. #43] is DENIED AS MOOT.

This the 8th day of January, 2020.

                                                               /s/ N. Carlton Tilley, Jr.
                                       Senior United States District Judge